UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRALYNN SANKS,

    Plaintiff,

v.                                                        Case No. 08-10066
                                                         Hon. Sean F. Cox

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This matter is before the Court on Cross-Motions for summary judgment. For the following reasons, the Court **ADOPTS** the Report and Recommendation; **DENIES** Plaintiff's Motion for summary judgment; and **GRANTS** Defendant's Motion for summary judgment.

## I. BACKGROUND

This action arises out of the denial of Social Security benefits. Plaintiff claims she is disabled due to back, neck and leg pain.

On April 29, 2004, Plaintiff filed for both Social Security Disability Insurance Benefits and Supplemental Security Income. Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff's hearing was held July 31, 2006, before ALJ Karen Goheen. On February 21, 2007, the ALJ issued an opinion denying Plaintiff benefits. Plaintiff's request for review was denied by the Appeals Council and Plaintiff filed the instant action in this Court on January 4, 2008.

On March 28, 2008, Plaintiff filed a motion for summary judgment, arguing that the ALJ

1

erred by failing to fully credit Plaintiff's testimony regarding her limitations. Plaintiff contends she does require a sit/stand option, which would qualify her for benefits. Plaintiff also claims the ALJ erred because she did not address the transferability of Plaintiff's skills under Vocational Rule 201.06. In lieu of a response, on April 22, 2008, Defendant filed its own motion for summary judgment. Defendant argues that the ALJ's decision to discount Plaintiff's testimony regarding her limitations was supported by substantial evidence. Defendant points out that Plaintiff was on relatively mild medications, did not have frequent care, and showed improvement with treatment. Additionally, Defendant asserts that Rule 201.06 does not apply because the ALJ found the Plaintiff had directly transferable skills from her past relevant work.

The motions were referred to Magistrate Judge Donald Scheer. On May 21, 2008, Magistrate Scheer issued a Report and Recommendation ("R&R"), recommending the court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. Plaintiff filed objections on May 30, 2008.

## II.  STANDARD OF REVIEW

This Court must review the Administrative Law Judge's decision to determine whether it is supported by "substantial evidence." "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989), *citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a

"zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, nor make credibility determinations. *Id.*

### III.   ANALYSIS

There are five factors that the Social Security Agency uses to determine eligibility for benefits. Plaintiff has the burden on the first four and must establish that: 1) she is not presently engaged in gainful employment; and 2) she suffered from a severe impairment; and 3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; or 4) she did not have the "residual functional capacity" ("RFC") to perform past work. *Jones v Comm'r of Soc. Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If the Plaintiff satisfies her burden, the burden shifts to the Commissioner for the fifth factor to show that there is other work available in the economy that the claimant can perform. 20 C.F.R. §§404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary,* 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of vocational expert testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. ALJ Decision

The ALJ denied Plaintiff benefits at step five. She found there was a significant number of jobs Plaintiff could perform in the local economy. The ALJ found Plaintiff had an RFC:

> ...to perform working [sic] lifting and/or carrying 8 to 10 pounds occasionally and less than 8 to 10 pounds frequently; which is primarily seated and having the ability to change positions at 15 to 20 minute intervals; with postural activities being limited to occasionally and the avoidance of lifting above chest level.

[Tr. 16]. The ALJ did not fully credit Plaintiff's testimony regarding the severity of the limiting effects of her symptoms. The ALJ noted that although the allegedly disabling conditions were brought about by an auto accident, Plaintiff did not seek treatment for approximately 10 months. [Tr. 17]. The ALJ also notes that Plaintiff's treatment history for the allegedly disabling conditions was "relatively sparse considering the limitation to which she testified at the hearing." [Tr. 17]. Further, the ALJ pointed out that Plaintiff's use of mild pain relievers further undercuts the credibility of Plaintiff's claims of debilitating pain. [Tr. 18]. In addition, the ALJ noted that Plaintiff showed improvement based on the records of her treating physician, Dr. Haranath Policherla. [Tr. 17]. Finally, Plaintiff's cerebellar dysfunction was likely a birth defect, which did not impair Plaintiff during her previous work experience. [Tr. 17].

The vocational expert testified that Plaintiff's past relevant work as a cashier was semi-skilled with skills transferable to semi-skilled sedentary cashier jobs. [Tr. 19]. The vocational expert testified that given Plaintiff's RFC, Plaintiff could perform the "requirements of representative occupations such as semi-skilled sedentary cashier." [Tr. 19]. The vocational expert opined there were 2,500 of those jobs in the local economy.

### B. Summary Judgment Motions

Plaintiff argued in her motion for summary judgment that the ALJ erred because she

4

stated in her decision that claimant testified to symptoms and limitations not reported in the record, specifically noting that there was "no report of knee pain in the record or treatment for the same." [Tr. 16]. Plaintiff points out that one medical record did indicate that Plaintiff complained of knee pain. Plaintiff also appears to argue that the ALJ was not specific enough in her hypothetical about the requirement that Plaintiff be allowed to change positions. Plaintiff contends that if the ALJ intended for Plaintiff to be allowed to stand for long periods of time, then Plaintiff must be found disabled because that is akin to a sit/stand option. Finally, Plaintiff asserts that the ALJ erred by not doing an analysis of the transferability of Plaintiff's skills under Vocational Rule 201.06.

Defendant responded that the ALJ's credibility determination was supported by substantial evidence in light of the several other reasons the ALJ gave for her finding. Defendant also contends the ALJ sufficiently defined what she meant by "change positions" during the hearing where she clarified to the vocational expert that she meant to be able to "stand up for a moment." Lastly, Defendant argues that Rule 201.06 does not apply because the ALJ found Plaintiff had directly transferable skills from her past relevant work.

### C.     R&R

Magistrate Scheer recommended the Court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. Magistrate Scheer agreed with the ALJ's credibility determination, finding that there was a lack of objective medical evidence to support the severity of the limitations claimed by Plaintiff. The Magistrate did not address the clarity of "change positions" or the application of Vocational Rule 201.06.

### D.     Objections

Plaintiff filed timely objections.  Plaintiff argues the ALJ erred because she said Plaintiff did not make any complaints about knee pain when in fact, she had.  Plaintiff claims this issue was not addressed by the Magistrate.  Plaintiff also points out that the Magistrate did not address whether in setting Plaintiff's restriction that she be allowed to "change positions" the ALJ was referring to standing for long periods of time.  If she was, Plaintiff claims she must be found disabled.  Finally, Plaintiff notes that the Magistrate failed to address her argument regarding Rule 201.06.

**E.     Analysis**

The ALJ's credibility determination is supported by substantial evidence.  Even if the ALJ overlooked the single undated complaint of leg and knee pain, under the ALJ's analysis that would not have made a difference.  The ALJ gave a complete analysis of her reasoning for failing to fully credit Plaintiff's testimony regarding the severity of her limitations.  Among her reasons were the fact that although the auto accident caused the alleged onset of Plaintiff's disabling conditions, Plaintiff did not seek treatment for 10 months.  The treatment Plaintiff did receive, according to the ALJ, was sparse.  Additionally, Plaintiff's allegedly debilitating pain was managed with mild pain relievers and she showed improvement with treatment.  Thus, a single complaint that did not require a stronger pain reliever and did not result in any continued treatment, is irrelevant.  As Plaintiff herself admits, "[t]he knees are clearly not the major complaint." [Obj. p.2].

The ALJ sufficiently clarified to the vocational expert that by "change positions" she meant the ability to "stand up for a moment." [Tr. 168].  Following her clarification, the ALJ asked the vocational expert how many of "those type of cashiering jobs" existed. [Tr. 168].  The

6

ALJ clearly meant cashiering jobs that would allow the Plaintiff to stand up for a moment. Accordingly, Plaintiff is not disabled on this basis.

Finally, Plaintiff argues that the ALJ failed to make the required findings under Vocational Rule 200.00(f). The rule requires that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Subpart P, Appendix 2, Sec. 201.00(f). The reason for this requirement is that "at an advanced age, a person has little time to learn a new skill and apply it to a new job, especially if that person is restricted to sedentary work by a medical disability." *Weaver v. Secretary of Health and Human Services*, 722 F.2d 310, 312 (6th Cir. 1983). Plaintiff claims that the ALJ did not address this requirement.

*Burton v. Secretary of Health and Human Services*, 893 F.2d 821 (6th Cir. 1990) is controlling in this case. In *Burton*, the claimant was of advanced age and her past relevant work was as a salesperson-cashier in a clothing store. The claimant could no longer perform her past relevant work because it required prolonged standing. However, the vocational expert testified that "her acquired skills were transferable to sedentary self-service cashier work without the need for vocational adjustment." *Id.* at 822. The ALJ denied benefits and the claimant appealed. The court first noted that several decisions have held that cashier's skills are transferable. *Id.* at 823. The court went on to note that "[i]t is not enough, however, that the claimant possess transferable skills; their transfer must require little if any vocational adjustment." *Id.* at 824. The court held the vocational expert's testimony showed there was little, if any, vocational adjustment required:

> The vocational expert offered testimony comparing [the claimant's] past work to the self-service cashier work which he recommended that she pursue. Self-service cashier's jobs, said the expert, of which there are 4,500 in the local economy, require only sedentary exertional levels, and permit an employee to alternate from a sitting to a standing position at will. Further, the prospect of lifting or carrying is slight, since the vocational expert testified that the lion's share of self-service cashier's work is done within the confines of a booth. [The claimant] therefore could readily transfer her cashier's skills with little if any vocational adjustment.

*Id.* at 824.

In this case, neither the vocational expert, nor the ALJ, explicitly used the phrase "vocational adjustment." However, the testimony offered by the vocational expert is strikingly similar to the testimony offered in *Burton*:

> Q. Please classify the past work as to skill and exertional level.
>
> A. She was a supervisor of - the title was supervisor of information at a museum, but it really was more of a cashier work -
>
> Q. Okay.
>
> A. - where she was required to schedule the work of other cashiers, balance daily receipts, and also cashiering. This work was light because of the standing requirements when customers or patrons came to the museum. It's semi-skilled. She also was a child care worker at a school system where she dealt with preschoolers, and this was light to medium, and the work was of an unskilled nature.
>
> Q. Okay. Any transferable skills from the cashier?
>
> A. Cashiering provides for transferable skills to other cashiering jobs that the person could do from a seated position -
>
> Q. Um-hum.
>
> A. - rather than standing.
>
> Q. Okay.
>
> A. And there are accounts reconciliation cashiers, we find that those types of

> > people in banks where they do daily receipts and reconciliation. We also have jobs in a variety of clerical areas and vocations.
>
> * * *
>
> A. Again, we find that most cashiering at the semi-skilled level is done predominantly seated. * * *
>
> * * *
>
> Q. Okay. And how may of those type of cashiering jobs would be available in the local economy?
>
> A. In existence there's about 2,500 jobs of that type in the southeast area of the state.

[Tr. pp.166-168]. Similar to the expert in *Burton*, in this case, the vocational expert found that cashiering is a transferable skill, compared the past relevant work with the suggested jobs, and found that the seating restrictions could be met. Based on this testimony, the ALJ determined Plaintiff's past relevant work was semi-skilled with skills transferable to semiskilled sedentary cashier jobs. As was found in *Burton*, this is sufficient to find that Plaintiff could readily transfer her cashiering skills with little or no vocational adjustment.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation; **DENIES** Plaintiff's Motion for summary judgment; and **GRANTS** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**

                                        <u>S/Sean F. Cox</u>
                                        **Sean F. Cox**
                                        **United States District Judge**

**Dated: July 28, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record**

**on July 28, 2008, by electronic and/or ordinary mail.**

        **S/Jennifer Hernandez**
        **Case Manager**